# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**K.D.C.,**
**Respondent Below, Petitioner**

**FILED**

April 12, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 11-1788** (Jefferson County No. 97-D-46)

**F.V.L.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner K.D.C.,[1] by counsel Sherman L. Lambert Sr., appeals the Circuit Court of Jefferson County's "Order Denying Petition for Appeal," entered November 15, 2011, that upheld the Family Court of Jefferson County's dismissal of petitioner's second motion to reverse a l997 paternity finding on the grounds of alleged paternity fraud. Respondent-mother F.V.L., by counsel Cynthia Scales, has filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

B.C., the child at issue in this appeal, was born on September 19, 1996, to respondent-mother. That same day, petitioner acknowledged paternity of B.C. by signing a paternity affidavit. The parties have never been married.

In 1997, respondent-mother filed an action against petitioner for child support. Petitioner was represented by counsel at the hearing on the matter. The "Final Order" adjudging petitioner to be the B.C.'s father was entered on June 18, 1997. Petitioner did not appeal the order.

Six years later, in 2003, petitioner conducted a DNA test on himself and B.C. without the permission of the family court or respondent-mother. The test revealed that B.C. was not petitioner's biological daughter. On May 2, 2003, petitioner filed a "paternity fraud" petition in family court. The family court appointed a guardian ad litem ("GAL") for B.C. and sent the parties to mediation. The mediation resulted in a visitation and custody agreement. In December of 2004, the GAL reported that petitioner was B.C's "psychological" father and that it was not in B.C.'s best interest for paternity to be disproven pursuant to *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989).

---

[1] In keeping with the Court's policy of protecting the identity of minors, the parties and the child at issue in this appeal, B.C., will be referred to by their initials.

At the hearing on petitioner's paternity fraud petition, respondent-mother testified that based upon the gestational-age estimates provided by her obstetrician, she believed that petitioner was the child's father. In its "Final Order" entered on January 20, 2004, the family court denied petitioner's paternity fraud challenge on the grounds that respondent-mother had not intended to deceive petitioner about the child's paternity. Petitioner did not appeal the order.

On September 22, 2010, seven years after petitioner filed his first paternity fraud petition, and just before B.C.'s fourteenth birthday, petitioner filed a motion to re-open his paternity case, to set aside the 2004 "Final Order," and to implead the child's putative biological father into the paternity case. Petitioner argued that he should not have to pay child support because respondent-mother had committed paternity fraud, his 2004 counsel was ineffective, and it was in the child's best interest to know her biological father.

In its January 3, 2011, order, the family court ruled that the issues raised by petitioner had been previously adjudicated; that petitioner's motion to implead the child's putative biological father was without merit; and that in petitioner's 2004 paternity fraud petition, he had failed to implead the child's biological father as required pursuant to Rule 19 of the Rules of Civil Procedure.

Petitioner appealed to the circuit court. On June 24, 2011, the circuit court vacated the family court's order on the grounds that the family court failed to rule on petitioner's motion to implead B.C.'s putative biological father and failed to answer the "salient question regarding application of the doctrine of 'res judicata'" in regard to "whether the two actions involve either the same parties or persons in privity with those parties."

The family court entered its "Amended Order After Remand" on July 11, 2011, in which it concluded that the doctrine of res judicata did apply to the determination of paternity between petitioner and respondent, but did not apply between the putative biological father and B.C. Should the putative biological father and B.C. seek to challenge petitioner's prior adjudication of paternity. The family court also concluded that petitioner was time-barred from challenging his 1996 paternity acknowledgement.

On August 9, 2011, petitioner appealed to the circuit court on the ground that, on remand, the family court failed to follow the instructions contained in the circuit court's June 24, 2011 order. On November 15, 2011, the circuit court, in its "Order Denying Appeal," ruled that it could find no legal precedent that would allow petitioner to re-litigate paternity more than a decade after he had acknowledged paternity and more than six years after his first paternity fraud challenge was denied.

On appeal, petitioner argues that the circuit court erred in denying his appeal of the family court's order because respondent-mother committed fraud in naming petitioner as the child's father.

> In reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous

2

standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

Having reviewed the circuit court's "Order Denying Petition for Appeal," entered November 15, 2011, we find the circuit court was correct in its reasoning and, as such, did not abuse its discretion in denying petitioner's appeal of the family court's July 11, 2011, "Amended Order After Remand." Therefore, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions in regard to the assignment of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

Affirmed.

**ISSUED:** April 12, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

FILE COPY

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

RECEIVED
NOV 15 2011
JEFFERSON COUNTY
CIRCUIT CLERK

K    D. C    ,

       **Respondent/Appellant,**

v.

       **Civil Action No. 97-D-46**

F    V. L    ,

       **Petitioner/Appellee.**

## ORDER DENYING PETITION FOR APPEAL

This Appeal is K    D    C    second attempt at ending support for a child he knew was not his since 2004 and suspected was not his since 1997. In 2004, Mr. C    tried, albeit in vein, to reverse the 1997 paternity finding of the Family Court by asserting paternity fraud. In 2010, Mr. C    filed this action to change the outcome of the 2004 hearing.

### Procedural History

In September of 1996, the child was born to Appellee F    L    . In 1997, Mrs. L    filed an action for child support against Mr. C    Mr. C    and Mrs. L    were never married.

An Order adjudging Mr. C    to be the Father was entered on May 7, 1997. In 2004, Appellant found out that the child was not his by conducting a DNA test on the child without the Family Court's or the mother's permission. Mr.

1

C     then filed a petition alleging that the mother committed fraud and asking the Family Court to modify child support, to change the child's name, and modify visitation. At this juncture, Mr. C     was represented by Keith L. Wheaton, who was later disbarred by the West Virginia Supreme Court of Appeals.

The court ordered the parties back to mediation, forbid disclosure of paternity to the child, and appointed Kirk M. Bottner as guardian *ad litem* (GAL) for the child. The mediation resulted in a visitation and custody agreement. In December, GAL's report recommended to the Court that Appellant was the child's psychological father.

At the hearing before Family Court Judge Sally Jackson on January 20, 2004, Mr. C     / and his counsel stated that he only wanted visitation with the child if the Court denied his paternity fraud challenge. Mr. C     argued he tried to challenge paternity from the beginning in 1997, before another Family Court Judge, but was not allowed to do so because his name was on the birth certificate.

The Court then asked a series of questions from Mrs. L     , the mother of the child, regarding the alleged fraud. Mrs. L     stated a gynecologist estimated how far along she was and based on those dates Mrs. L     / honestly believed Mr. C     to be the father. Mrs. L     did not inform Mr. C     of other men who could potentially be the father because she was so sure that it was Mr. C     , based on the date estimates provided by her doctor.

When asked if Mr. C     presence is in the best interest of the child, Mrs. L     asserted she does not want Mr. C     to pay child support and that

2

she thinks Mr. C continued presence in the child's life is a "lie" and that she does not want to continue to lie.

Subsequently, Family Court held that Mrs. L honestly believed Mr. C to be the father of the child and denied Mr. C paternity fraud challenge. In January of 2004, the Family Court entered a final order finding that there was no fraud, that the mother honestly believed C was the biological father, and requiring C to continue paying child support at a lower rate. Mr. C never appealed the 2004 Order.

On September 22, 2010, C filed a motion to re-open and set aside the 2004 finding. C also asked the court to implead the biological father. In his petition, C argued he should not pay child support because: 1) the mother has committed fraud, 2) his 2004 counsel, Keith L. Wheaton, was ineffective, 3) testimonial evidence exists that the mother knowingly committed fraud, and 4) it would be in the best interests of the child to know her biological father.

On December 2nd, 2010, the issues were argued before Family Court Judge David Greenberg. In that hearing, Mrs. L attorney, Cinda L. Scales, informed the judge that the probable biological father was known to the mother, lives in the area, and has been in the child's life since after the petition was filed. All parties, including the child's GAL Mr. Buttner, agreed that the child does not feel comfortable in Mr. C home and does not want to visit Mr. C on the regular basis. It is unclear from the record whether the child is aware of who her biological father is. At the end of the hearing, the mother moved the Court to stop

or modify child support and visitation and offered to forego child support payments.

The Court entered a Final Order on January 3, 2011. The Order found that C argument – *res judicata* does not apply because he impleaded the biological father – was meritless. The Court also pointed out that C did not implead the biological father in the 2004 Action, when he knew of the test results, pursuant to *Rule* 19.

On appeal in June, 2011, this Court entered an order finding that the Family Court erred in applying "*res judicata*" as a matter of law. This Court focused on the fact that the Family Court did not consider privities amongst the parties in its holding.

On remand to Family Court, Judge Greenberg entered an amended order clarifying his prior order. His amended order held that 1) the remand order of this Court means that all Orders entered prior to January 3rd, 2011 are effectively *res judicata*; 2) *res judicata* applies to prior determination of paternity between Petitioner and Respondent; and 3) even if *Res judicata* does not apply in this case, the Petitioner is time barred from challenging the prior acknowledgement of paternity.

This appeal followed on August 9, 2011. This Court entered an order stating just cause for not issuing a ruling within 60 days on October 20, 2011. For the reasons stated below, Judge Greenberg's holding is affirmed and the petition for appeal is denied.

4

## Standard of Review

As an appellate court, this Court may only disturb a decision of the Family Court Judge for an abuse of discretion or due to clearly erroneous findings of fact. W.Va. Code §51-2A-14(c). This Court emphasizes that the standard of review on an appeal of this nature is limited.

## Analyses

West Virginia is not unfamiliar with litigation initiated by men who were ordered to pay support for another's child upon the mother's assertion of paternity. *See e.g. In Re Marriage of Betty L.W. v. William E.W.*, 569 S.E.2d 77 (W. Va. 2002) (Maynard, J., dissenting) (lamenting mothers' ability to defraud men and obtain child support by not disclosing that they are not the only candidate for paternity and allowing the men to innocently assume the burdens of fatherhood); *William L. v. Cindy E.L.*, 495 S.E.2d 836, 842 (1997). These cases put courts in difficult positions of balancing interests of the child and finality of judgments against fairness to those ordered to pay support. *See generally Darlene M. v. James Lee M., Jr.*, 400 S.E.2d 882 (W. Va. 1990); *see also N.C. v. W.R.C.*, 317 S.E.2d 793, 797 (W. Va. 1984) (upholding the paternity finding and reasoning that "the dilemma in which the appellant now finds himself resulted from his fault or negligence in not raising the issue of paternity through appropriate proceedings prior to the final disposition of his second divorce"). The issues in the case *sub judice* are examples of the complexity paternity fraud cases procreate.

Generally, *res judiciata* protects the children from re-litigation of paternity

5

and guards the finality of a court's decision. *See Darlene M.*, 400 S.E.2d at 885. Another principle protecting the finality of judgment is estoppel. *See id.* at Syl. Pt. 4. (holding trial judges must refuse DNA evidence where a man held himself out as the father for a such period of time that disproof of paternity would result in undeniable harm to the child).

It appears to this Court that alleging paternity fraud is one way to challenge a paternity acknowledgement. *See e.g. G.M. v. R.G.*, 566 S.E.2d 887 (W. Va. 2002) (requiring courts to consider evidence of paternity fraud as a matter of due process). Paternity fraud can also result in a paternity adjudication being attacked in an independent action. *N.C. v. W.R.C.*, 317 S.E.2d 793, 797 (W. Va. 1984) (holding independent action to be a way to get around a final adjudication of paternity if five requirements are satisfied, one of the requirements being lack of fault and negligence). But this Court found no statutory or case law allowing men – who acknowledged paternity over a decade ago, were adjudicated to be the father, and lost a paternity fraud challenge – to once again bring a paternity fraud challenge many years later.

In this case, Appellant told the Family Court in 2004 that he suspected he was not the father since 1997, Appellant alleged paternity fraud in 2004 when he knew he was not the father, the Family Court Judge Jackson weighed paternity fraud evidence in 2004, the judge determined that there was no paternity fraud in 2004 despite the DNA test and while acknowledging that Mr. C.    was not the biological father of the child, Appellant did not appeal the 2004 decision, and Appellant waited until 2010 to bring a second paternity fraud challenge. Like the

6.

Family Court Judge below and despite the pull of equity to do otherwise, this Court finds no legal precedent allowing this Appellant to re-litigate paternity over a decade after he acknowledged paternity and over six years after he lost his last paternity fraud challenge. Therefore, the Appeal must be **DENIED**.

7

## Conclusion

Accordingly, this Court **ORDERS** that the Petition for Appeal to Circuit Court is **DENIED**. The objection of the parties to any and all adverse rulings is noted. This is a Final Order from which any party may appeal to the West Virginia Supreme Court of Appeals under applicable rules.

There being no further issues remaining, this matter shall be stricken from the Court's docket and placed among causes ended. The Clerk is directed to enter this Order and transmit copies of this Order to all *pro se* parties and counsel of record.

Entered: *November 15, 2011*

David H. Sanders
Judge of the 23rd Judicial Circuit

A TRUE COPY
ATTEST:

LAURA E. RATTENNI
CLERK, CIRCUIT COURT
JEFFERSON COUNTY, W.VA.

BY _____